IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

UNITED STATES OF AMERICA, §
§
Plaintiff, §
§ Criminal No. 3:09-CR-249-D(15)
VS. §
§
RICKY J. KEELE, §
§
Defendant. §

MEMORANDUM OPINION
AND ORDER

In this memorandum opinion and order, the court addresses several pretrial motions filed by defendant Ricky J. Keele ("Keele").[1]

I

*Motion for Production and Inspection*

A

Keele moves for production and inspection of *Brady* material and information that may lead to evidence. Keele makes 12 specific requests (one of which, category 6, includes 19 subcategories). The government agrees to comply with its obligations under Fed. R. Crim. P. 12(b)(4), 16, and 26.2, Rules pertaining to witnesses who testify, the Jencks Act, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. To the extent that Keele's

---

[1]The court has separately addressed other motions filed by Keele. His motion *in limine* will be addressed during or after the pretrial conference.

requests exceed what is required by these authorities, the government objects.

B

*Keele's Request for Disclosure No. 1*

In request No. 1,[2] Keele asks that the government disclose information that indicates there are written or oral statements apparently made by Keele but that may not be made by him. Specifically, Keele requests information regarding possible forgeries, signatures, or stamped signatures of Keele's name that were purportedly not signed by Keele. The government responds that it has provided Keele with material well beyond the scope of the law, and that *Brady* does not require the government to point the defense to specific documents. The government objects to this request as vague and unclear.

To the extent the government has agreed to the production Keele seeks, the court denies the motion as moot. To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

---

[2]The court will address Keele's specific requests in the order in which the government responded to them.

C

*Keele's Requests for Disclosure Nos. 2, 4, 9, 11, and 12*

In request No. 2, Keele asks that the government disclose information that Keele did not have the requisite knowledge or intent to commit the offenses charged or specific intent to violate the law with regard to the matters charged. In request No. 4, Keele asks that the government disclose information that he did not engage in communications or actions regarding any of the subject matters of the indictment. In request No. 9, Keele asks that the government disclose information that a payment made by or to him by any person or entity listed in the indictment was for a lawful or legitimate purpose. In request No. 11, Keele asks that the government disclose information that he was unaware of any unlawful conduct on the part of defendant Matthew Norman Simpson. In request No. 12, Keele asks that the government disclose information that he did not have the intent to pay for products or services rendered at the time required, as alleged in the indictment.[3]

The government recognizes its continuing obligations under *Brady* and *Giglio*. The government avers that it has provided Keele with material beyond the scope of the law, and that *Brady* does not require the government to point the defense to specific documents.

---

[3]As phrased, this request appears to refer to *inculpatory* rather than *exculpatory* materials. The court will assume that Keele intends to request disclosure of information that he had the intent *not* to pay for products or services rendered at the time required, as alleged in the indictment

The government further responds that Keele's requests are overbroad and vague and may include Jencks Act material, which the government is not required to produce until trial. Finally, the government asserts that Keele is aware of and can obtain evidence of business activities in which he participated.

To the extent the government has agreed to the production Keele seeks, the court denies the motion as moot. To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

D

*Keele's Request for Disclosure No. 3*

In request No. 3, Keele asks that the government disclose information showing Keele's reputation for honesty, integrity, and trustworthiness. The government objects to this request and argues that *Brady* does not require it to point Keele to specific documents. The government also argues that it does not have a duty to disclose evidence available from other sources or in Keele's possession.

To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

E

*Keele's Request for Disclosure No. 5*

In request No. 5, Keele asks that the government disclose names of any individuals who made an arguably favorable statement about him. The government objects to this request as overbroad and as seeking material covered by the Jencks Act, which the government will provide to Keele at the appropriate time.

To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

F

*Keele's Request for Disclosure No. 6*

In request No. 6, Keele asks that the government disclose information that could detract from the probative force of the government's evidence, including impeachment evidence or evidence of consideration held out to a witness. Specifically, Keele requests that the government disclose the following regarding any potential government witness, informant, or government agent involved with this case: (a) requests or statements by government agents or employees regarding the payment of defendants' legal fees or expenses; (b) prior convictions, arrests, misconduct, wrongs, or bad acts; (c) prior inconsistent statements; (d) instructions not to discuss the case with defense counsel; (e) mental, emotional,

and physical history; (f) lie detector or polygraph tests and the results; (g) use of narcotics, alcohol, or other controlled substances; (h) defect or deficiency of character for truthfulness; (i) partiality, prejudice, bias, motive, interest, or corruption; (j) defect or deficiency of capacity; (k) identification of each occasion on which a witness was or is an informer, accomplice, expert, or has testified before a court, grand jury, or other tribunal or body; (l) benefit given in exchange for cooperation; (m) threat to prosecute; (n) promise or suggestion of leniency, compensation, assurance not to prosecute, or representations regarding uncharged misconduct; (o) immigration status of any potential government witness or informant who is not a United States citizen; (p) probation, parole, deferred adjudication, or deferred government or custodial status; (q) pending or potential criminal, civil, or administrative investigations, legal disputes, or transactions over which the government has influence that could be brought against the witness or friends or relatives of the witness; (r) existence and identity of federal, state, and local government files; and (s) threats or intimidation conduct by the United States Attorney's Office or a federal agency involved in the investigation.

The government agrees to provide the materials requested in subcategories (b), (c), (e), (f), (g), (l), (m), (n), and (o). The government objects to the remainder of Keele's requests as

overbroad, ambiguous, and outside the scope of Rule 16.

To the extent the government has agreed to the production Keele seeks, the court denies the motion as moot. To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

G

*Keele's Request for Disclosure No. 7*

In request No. 7, Keele asks that the court order that the discovery obligations of the government extend to the complainants listed in the indictment—AT&T and Verizon—and to their fraud investigators. The government opposes Keele's attempt to expand *Brady* and *Giglio* to private entities that did not participate in Keele's investigation.

Keele avers that the lead agents in this case worked in conjunction with fraud investigators for the complainants. He argues that because of this joint effort, the obligation to disclose discovery and *Brady* material should extend to the complainants. The government opposes this request and argues that the prosecution team consists of members of the Federal Bureau of Investigation, the North Texas Regional Computer Forensics Lab, and the United States Attorney's Office. The government maintains that victims like AT&T and Verizon are not part of the prosecution and

that at no time were AT&T, Verizon, or their fraud investigators government agents.

"*Brady* obligations extend to all persons 'acting on the government's behalf[.]'" *United States v. Stewart*, 433 F.3d 273, 298 (2d Cir. 2006) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)). In some circumstances, the government is deemed to have the knowledge of persons who are not prosecutors in the case. The government must disclose any *Brady* evidence that is known by the prosecutorial team, which includes investigative and prosecutorial personnel. *See United States v. Antone*, 603 F.2d 566, 569 (5th Cir. 1979). For example, if a state government works with the federal government on a case, the federal government is attributed the knowledge of the state government for purposes of *Brady* if the two governments "pooled their investigative energies to a considerable extent." *Id*. The question whether a non-prosecutor is part of the prosecutorial team for *Brady* purposes turns not on the person's status but on what the person did. *Stewart*, 433 F.3d at 298. For example, in *United States v. Morell*, 524 F.2d 550 (2d Cir. 1975), the court imputed a law enforcement agent's knowledge to the prosecution where the agent supervised a witness, participated actively in the investigation, and frequently sat at counsel table throughout the trial. *Morell*, 524 F.2d at 555.

Keele has cited no authority, however, that holds that knowledge of facts by a private company is imputed to the

government for *Brady* purposes where "there is no claim that the government was willfully blind to exculpatory evidence that it should well have known was available." *United States v. Josleyn*, 206 F.3d 144, 153 n.8 (1st Cir. 2000). In fact, "[w]hile prosecutors may be held accountable for information known to police investigators, we are loath to extend the analogy from police investigators to cooperating private parties who have their own set of interests." *Id.* at 154 (citation omitted). Therefore, the court holds that the government is only imputed with the knowledge that the government actually had and is not otherwise imputed with the knowledge of private companies or their fraud investigators for *Brady* purposes. *Id.* The court therefore denies Keele's motion in this respect.

H

*Keele's Request for Disclosure No. 8*

In request No. 8, Keele asks that the government disclose written or recorded statements made by Keele to any government or non-government person that are favorable to Keele, including, but not limited to, emails, instant messages, text messages, and recordings. The government avers that it has provided Keele with material beyond the scope of the law, and that *Brady* does not require the government to point the defense to specific documents. Specifically, the government states that it has provided Keele with statements he made to law enforcement pursuant to Rule 16, and it

has provided defendants with copies of audio recordings it received from the victim companies.

To the extent the government has agreed to the production Keele seeks, the court denies the motion as moot. To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

I

*Keele's Request for Disclosure No. 10*

In request No. 10, Keele asks that the government disclose information that any of the complainants in the indictment have been accused of fraud, overbilling, deceptive or anticompetitive conduct, and similar misconduct, including accusations made by government agencies, within the past 10 years.

The government argues that Keele's request is overbroad, vague, and ambiguous. The government asserts that Keele has access to public databases and that the government has no duty to disclose evidence available to Keele from other sources or in Keele's possession.

To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4), 16, and 26.2, *Brady*, *Giglio*, and/or the Jencks Act, the motion is denied as exceeding what these authorities require.

II

*Motion for Notice under Rule 12(b)(4)*

Keele moves for notice of the government's intent to use evidence pursuant to Rule 12(b)(4)[4] and for notice of other evidence that the government intends to introduce at trial that may be subject to legal objection by a motion to suppress or other motion.

The government agrees to provide complete discovery of all physical tangible evidence in its possession and to comply with the court's scheduling order and Rule 12(d)(2)[5]. The government agrees to file an exhibit list identifying all items intended for use by the government in its case-in-chief. To the extent that Keele's request exceeds the scope of Rule 16(a)(1)(E), the government objects.

To the extent the government has agreed to the production Keele seeks, the court denies the motion as moot. The government

---

[4]Rule 12(b)(4)(B):

> At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

[5]There is no Rule 12(d)(2). The court assumes that the government agrees to comply with Rule 12(b)(4), the local rules, and the court's order.

must provide discovery under Rule 12(b)(4) no later than March 31, 2011 at noon.  To the extent Keele requests discovery of more than the government is required to disclose under Rules 12(b)(4) and 16, the motion is denied as exceeding what is required by these rules.

No later than April 8, 2011 at noon, Keele may file—without leave of court—a motion to suppress which he could not reasonably have filed until he received the government's disclosure under Rule 12(b)(4).

III

*Motion for a Pretrial Hearing*

Keele moves for a pretrial hearing to determine the admissibility of coconspirator statements and to compel pretrial government proffer.  He requests that the court conduct a pretrial hearing to determine the admissibility of any coconspirator statements that the government intends to introduce under Fed. R. Evid. 801(d)(2)(E).  Keele argues for several reasons that a *James* hearing[6] should be conducted.  He requests that the court order (1) that a pretrial hearing be held to determine the admissibility of all extrajudicial declarations the government intends to introduce under Rule 801(d)(2)(E); (2) that the government be required to prove at this hearing the existence of a conspiracy and Keele's participation in it at the time the Rule

---

[6]*United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc).

801(d)(2)(E) statement was allegedly made, prior to attempting to introduce the statements under Rule 801(d)(2)(E); (3) that the government be required to prove at this hearing the declarant's participation in the conspiracy at the time the Rule 801(d)(2)(E) statement was made; (4) that the government be required to prove that any such statement was made during the course of and in furtherance of the conspiracy; and (5) that the government proffer to Keele, at least 14 days before the hearing, all such statements that the government intends to introduce under Rule 801(d)(2)(E). The government opposes the motion, maintaining that in this case a *James* hearing is neither required nor practical; the government has agreed to comply with its obligations under the Jencks Act and the court's scheduling order; coconspirator statements are not discoverable under Rule 16(a)(1)(A); and a hearing would unnecessarily prolong the trial proceedings and would essentially result in two trials.

In *James* the Fifth Circuit held that coconspirator statements are admissible as non-hearsay under Rule 801(d)(2)(E) only if substantial independent evidence of a conspiracy exists. *United States v. James*, 590 F.2d 575, 581 (5th Cir. 1979) (en banc). "A *James* hearing, conducted outside the presence of the jury, is *one potential method* by which the district court may ensure [that] the Government can satisfy the predicate facts needed to prove the conspiracy independent of the statements." *United States v.*

*Williams*, 264 F.3d 561, 576 (5th Cir. 2001) (emphasis added). But deciding "[w]hether a *James* hearing is necessary in a particular case [is] within the discretion of the trial court." *Id.* "*James* has *never required* a hearing outside the presence of the jury." *United States v. Fragoso*, 978 F.2d 896, 899 (5th Cir. 1992) (emphasis added). And in this case, the court agrees with the government that convening such a hearing would be burdensome and effectively result in a mini-trial of potentially considerable length, given that one of Keele's requests is that the government be required to prove at the hearing the existence of a conspiracy and of Keele's participation in it at the time the statement was allegedly made. Presumably, Keele would insist that the government make this showing through the witnesses whom the government intends to call to testify at trial. The government is not obligated in a conspiracy case involving Rule 801(d)(2)(E) evidence to participate in a form of elaborate pretrial discovery conducted under the guise of requiring that it satisfy the predicate facts needed to prove the admissibility of coconspirator statements. Accordingly, the court denies the motion.

The court recognizes that, during the trial, it must "whenever reasonably practicable, require the showing of a conspiracy and of the connection of the defendant with it [pursuant to Rule 801(d)(2)(E)] before admitting declarations of a coconspirator." *Fragoso*, 978 F.2d at 900. In complying with Rule 801(d)(2)(E), the

court must determine whether there is sufficient "'evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made during the course and in furtherance of the conspiracy.'" *Id.* (quoting *Bourjaily v. United States,* 483 U.S. 171, 175 (1987)). The court will adhere to these requirements in trying this case.

IV

*Motion to Compel Production of Coconspirator Statements*

As a component of his motion for a pretrial hearing, Keele moves to compel the government to produce the coconspirator statements that it intends to use at trial under Rule 801(d)(2)(E). He maintains that he is entitled to pretrial discovery of these statements because they are in essence his statements under Rule 801(d)(2)(E), and he is entitled to production of his statements under Rule 16; disclosure is necessary to establish the reliability or lack of reliability of coconspirator statements; and, without disclosure, the defense will be less able to assist the court in making factual determinations required under Rule 801(d)(2)(E). The government responds that pretrial disclosure of coconspirator statements is not required by Rule 16 and that Keele relies on non-binding authority.[7] The government also agrees to provide the defense a copy of any statements of testifying coconspirators pursuant to the Jencks Act.

---

[7]*United States v. Thevis*, 84 F.R.D. 47 (N.D. Ga. 1979).

"[S]everal courts have held that the fact that a coconspirator's statements are viewed as statements by the defendant under [Rule 801(d)(2)(E)] does not make them discoverable under Rule 16(a)(1)(A) or (B)." *United States v. Hansen*, 2005 WL 1206868, at *3 (N.D. Tex. May 18, 2005) (Fitzwater, J.) (citing *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988)). "The admissibility of such statements can be determined at trial and the statements may be considered in light of any other independent evidence." *Id.* (citing *Bourjaily*, 483 U.S. at 180). The court holds that Keele is not entitled to production of coconspirator statements under Rule 16, and it denies his motion.

V

Except to the extent that the Jencks Act and Rule 26.2(a) permit later disclosure or that the court has set an earlier deadline for disclosure under Rule 12(b)(4), the government must comply no later than April 25, 2011 at noon with its disclosure and discovery obligations imposed by this memorandum opinion and order and by the government's agreement to produce what Keele has requested. Concerning material covered by the Jencks Act or Rule 26.2, in accordance with the custom in this district, the government must disclose such statements no later than the end of the business day that precedes the date on which Keele will begin

his cross-examination of a witness.

**SO ORDERED.**

March 21, 2011.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE